ULTRADENT PRODUCTS, INC., a
Utah corporation, Plaintiff,

v.

DENTSPLY INTERNATIONAL, INC.,
a Delaware corporation,
Defendant.

No. 2:04CV160DS.

United States District Court,
D. Utah,
Central Division.

Oct. 7, 2004.

Brent P. Lorimer, Thomas R. Vuksinick, Workman Nydegger & Seeley, Salt Lake City, UT, for Plaintiff.

Raymond J. Etcheverry, David G. Mangum, Juliette P. White, Parsons Behle & Latimer, Jay D. Gurmankin, George M. Haley, Thomas J. Rossa, Blaine J. Benard, Greggory J. Savage, Christine T. Greenwood, Holme Roberts & Owen, LLP, Salt Lake City, UT, David R. Bailey, Joseph Milowic, III, Dale M. Heist, Woodcock Washburn, LLP, Philadelphia, PA, for Defendant.

## ORDER ADDRESSING MOTION TO DISQUALIFY HOLME ROBERTS & OWEN AS COUNSEL FOR DENTSPLY INTERNATIONAL, INC.

SAM, Senior District Judge.

### I. INTRODUCTION

In its motion to disqualify, Plaintiff Ultradent Products, Inc. ("Ultradent") seeks to disqualify the law firm of Holme, Roberts, & Owen ("HRO") from serving as counsel for the defendant, Dentsply International, Inc. ("Dentsply") in the above captioned matter. Ultradent is represented by the law firm of Workman Nydegger ("WN"), who has represented Ultradent in patent litigation for many years. David Seeley was a partner at WN for approximately eight years. Ultradent was a client of WN's during Mr. Seeley's employment. Mr. Seeley is now employed by HRO, who has entered an appearance on behalf of

Dentsply. Ultradent argues that under the express terms of Rule 1.10(b) of the Utah Rules of Professional Conduct, HRO must be disqualified from representing Dentsply in this action. Dentsply argues that the motion should be denied because (1) Mr. Seeley never worked on any matter substantially factually similar to this case and possesses no confidential information, and (2) he has been screened off from all exposure to and involvement with this case.

## II. STATEMENT OF FACTS

Ultradent, a recognized leader in the innovation of dental products, is most well-known for its tooth bleaching system, sold under the trade name "Opalescence." Rather than using thin, runny bleaching solutions in rigid, inflexible and uncomfortable trays, this system uses thick, sticky bleaching gel in thin, flexible and very comfortable trays. This concept revolutionized the tooth bleaching industry, and many competitors copied it.

Ultradent considers its intellectual property to be a key business asset, and has a strong policy of protecting its intellectual property. *Id.,* ¶ 3. Ultradent has been the sole outside law firm retained by Ultradent for representation in its intellectual property matters since 1985. Mr. Seeley joined WN as a shareholder in 1984 when the firm was formed, and continued as a shareholder until 2003, when he separated from WN. He also served on WN's board of directors for many years. During the time Mr. Seeley was a shareholder at WN, the firm prosecuted all seven of the patents now at issue in the litigation between Ultradent and Dentsply.

In 1997, WN filed an action on behalf of Ultradent against Discus Dental, Inc. The Discus litigation involved five of the patents in suit in the Dentsply litigation. The litigation was hard fought and contentious. Numerous motions were filed and argued.

According to Ultradent, Mr. Seeley, as the second most senior shareholder at WN, was frequently consulted on issues related to the Discus litigation, both as a sounding board and for substantive input helpful in making strategic decisions. The discussions with Mr. Seeley included candid explorations of the strengths and weaknesses of Ultradent's positions, strategic approaches to issues raised by Discus and the Court and ways to make Ultradent's case more persuasive.

Mr. Seeley states in his affidavit that with the exception of a conversation with Thomas Vuksinick regarding a trial Mr. Vuksinick was handling for Ultradent, Mr. Seeley does not recall any substantive conversations regarding Ultradent's patents or litigation matters with his colleagues at WN, nor does he recall every having been consulted for advice on Ultradent's litigation or patents by anyone at the firm. Even if such discussion occurred, Mr. Seeley states that he now has no recollection of any significant facts about Ultradent, let alone any facts material to the subject matter of this litigation.

In 2003, prior to leaving WN, Mr. Seeley contacted Ultradent and said that he wanted to come to work as in-house patent counsel for Ultradent. In a meeting with Micha Barach, in-house counsel at Ultradent, Mr. Seeley told Mr. Barach that he had reviewed Ultradent's billings for the year 2002 and by reason of the review was well informed as to Ultradent's then-current intellectual property affairs, including both prosecution and litigation matters. According to Ultradent, the billing records from WN for 2002 included extensive information on the strategy utilized in the Discus litigation, as well as other highly confidential information. According to Dentsply, Mr. Seeley did not scrutinize the details of the time entries and focused primarily upon the hours billed to Ultra-

dent. Mr. Seeley's purpose in reviewing the report was not to learn confidential information about Ultradent or the litigation it was involved in, but to form an idea about the amount of patent prosecution work being done by WN for Ultradent.

Mr. Seeley joined HRO as a partner in July 2003. In February 2004, Ultradent, through WN, filed suit against Dentsply, seeking to enforce seven patents, five of which were involved in the Discuss litigation. Dentsply hired HRO to represent it. Because of Mr. Seeley's involvement with Ultradent at WN, HRO enacted a confidentiality screen prohibiting Mr. Seeley from having any access to or involvement with the Dentsply matter, and prohibiting any other HRO attorney or staff member from discussing the matter with Mr. Seeley. HRO also sent a letter to WN informing them that HRO had been retained by Dentsply to represent it in this case, and that a wall had been created and would be maintained that would isolate Mr. Seeley from all contact with the Dentsply matter. Two days later, WN responded, objecting to the representation of Dentsply by HRO and demanding that HRO withdraw. According to Ultradent a period of unsuccessful negotiations followed. On August 4, 2004, two days before Dentsply filed its Answer to the Complaint, Ultradent filed this motion to disqualify.

On Sept. 1, 2004 a telephone conference was held between the Court and the parties. The Court requested some additional information, including an *In Camera* declaration concerning the confidential information that was allegedly disclosed to Mr. Seeley while he was at WN, and additional briefing on whether an evidentiary hearing would be appropriate in this case. After considering all of the declarations and briefs that we have received, the Court has determined that it is unnecessary to hold an evidentiary hearing. We have also de-termined that the *In Camera* declaration of Mr. Lorimer is unnecessary in deciding the case, and therefore, we will not consider it in making our decision.

## III. ANALYSIS

### A. Determination of whether Mr. Seeley Obtained Confidential Information Protected by Rules 1.6 and 1.9

Rule 1.10(b) states,

When a lawyer becomes associated with firm, the firm may not knowingly represent a person in the same or a substantially factually related matter in which that lawyer, or a firm with which the lawyer has associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

Utah Rules of Professional Conduct 1.10(b).

The Tenth Circuit has interpreted this rule as requiring the satisfaction of four elements before a law firm can be disqualified. "First, either the lawyer who has changed firms or his prior firm must have represented a client whose interests are materially adverse to the client of the new firm. Second, the two matters must be the same, or substantially related. Third, the lawyer who has changed firms must have acquired information protected by Rules 1.6 and 1.9(b) that is material to the new firm's representation. Fourth, the new firm must know of the conflict arising from its representation." *SLC Ltd. v. Bradford Group W., Inc.*, 999 F.2d 464, 467–68 (10th Cir.1990). Both parties in the present case agree that the primary issue in this case focuses on the third element of rule 1.10. We will therefore discuss only that element.

■ The question at issue here, then, is whether Mr. Seeley acquired information protected by Rules 1.6 and 1.9(b) that is material to the representation of Dentsply by HRO. Dentsply answers this question by saying that Ultradent does not point to a single piece of confidential information which *is possessed* by Mr. Seeley but rather attempts to have HRO disqualified from Dentsply based on assumptions about what Mr. Seeley may have learned or could have learned while he was at WN. Dentsply repeatedly asserts that the relevant question is whether Mr. Seeley has actual present knowledge of confidential information that is material to the instant litigation. This, however, is not what is required by the plain language of Rule 1.10(b). The rule refers to protected information that the lawyer "had acquired." The use of the past tense indicates that the rule focuses on whether the newly associated lawyer "had" acquired material confidential information in the past, not whether he still "has" a recollection of that information.

Ultradent has made numerous allegations about Mr. Seeley receiving confidential information. Mr. Lorimer of WN, in a signed declaration, states that he "frequently consulted with Mr. Seeley on issues related to the Discus litigation, both as a sounding board and for substantive input helpful in making strategic decisions," and that those discussions included "candid explorations of the strengths and weaknesses of Ultradent's positions, strategic approaches to issues raised by Discus and the Court" and "disclosed highly confidential information about Ultradent and its positions in the Discus litigation." Ultradent is not required to reveal the substance of the communications to Mr. Seeley, for this would defeat the purpose of the disqualification. All that is usually required is a showing of the circumstances and subject of the communication to show whether it was confidential. *See Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1384

n. 8. (10th Cir.1994). Ultradent's disclosure of the type and nature of the confidences that were allegedly shared, is adequate for this motion.

Mr. Seeley does not deny that Mr. Lorimer had such conversations with him or that he received confidential information in those conversations. Mr. Seeley simply states that he "cannot say with absolute certainty that Mr. Lorimer never discussed the case with me," and that he has "no recollection of ever having such discussions with Mr. Lorimer." Mr. Seeley's inability to recall the discussions is not a denial that the conversations occurred.

Mr. Lorimer also states that in their meetings, the board of directors, including Mr. Seeley, discussed "the status of work being done for Ultradent, including the status of major litigation like the Discus case." Mr. Seeley states that he remembers mention being made in a board of directors meeting about an "upcoming trial" involving Ultradent. Ultradent states that the trial was the Discus trial, which involved five of the patents in the present case and similar technology.

Micha Barach, in-house counsel at Ultradent, stated in his declaration that Mr. Seeley represented to him that "he had the ability and desire to manage intellectual property litigation matters for Ultradent, as well as managing patent prosecution matters," that he was "very interested in managing Ultradent's litigation," and that "he was familiar with Ultradent's patent litigation matters as well as its prosecution matters." Mr. Seeley's declaration responds to these statements by saying that he "was not looking at handling litigation matters," that he did not review litigation bills and that he did not have "any specific discussion of a specific legal matter or any kind of litigation strategy."

Mr. Lorimer's and Mr. Barach's declarations, even without the *In Camera* declara-

tion, are sufficient to satisfy Ultradent's burden of showing that confidential information material to this litigation was received by Mr. Seeley. The burden now shifts to HRO to show that Mr. Seeley did not acquire any material confidential information. Mr. Seeley's repeated statements that he does not remember, are inadequate to meet that burden. Therefore, under Rule 1.10(b) not only Mr. Seeley, but HRO as well, are disqualified from representing Dentsply.

**B. Appropriateness of Avoiding Disqualification by the Implementation of Screening Measures.**

Dentsply argues that even if the standard for imputation in Rule 1.10(b) is met, imputing a conflict to HRO as a whole is inappropriate and unnecessary in this case, because Mr. Seeley has been timely and effectively screened from all exposure to the case. However, Rule 1.10 makes no provision for the allowance of screening measures. The one and only exception to disqualification under the rule is in 1.10(d), which states that, "A disqualification prescribed by this Rule may be waived by the affected client. . . ." Absent such a waiver, the express language of Rule 1.10(b) requires disqualification of both the attorney and the firm.

Dentsply argues that the trend is to permit law firms to implement screening measures as a means of preventing imputation. It cites a number of states that have incorporated the allowance of screening measures directly into their rules of ethics. However, the fact that some states expressly provide for screening as an exception to disqualification under their rules cuts against implying a screening exception in Utah's Rule of Professional Conduct 1.10(b). In fact, the drafters of the Rules considered and rejected an ethical wall exception to 1.10(b). *See Towne Development of Chandler v. Superior Court,* 173 Ariz. 364, 842 P.2d 1377, 1382 (1992).

Also, unlike Rule 1.10, Rule 1.11 includes an exception to imputed disqualification of a former government lawyer's firm if the disqualified lawyer is screened from participation in the matter. The existence of an express exception in Rule 1.11, but not in Rule 1.10 also indicates that the screening exception to imputation was intentionally omitted. This Court will not override the drafters' intent by implying such an exception.

**IV. CONCLUSION**

For the foregoing reasons Plaintiff's Motion to Disqualify Holme, Roberts & Owen is granted.

SO ORDERED.